UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DIAMOND B INDUSTRIES, LLC | CIVIL ACTION NO. 6:17-cv-01169 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| JAYMIE L. BANCROFT-BROWNLEE | MAGISTRATE JUDGE HANNA |

### REPORT AND RECOMMENDATION

Currently pending is the motion for default judgment (Rec. Doc. 11), which was filed by the Plaintiff, Diamond B Industries, LLC ("Diamond B Industries"). A hearing was held on June 28, 2018. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the record, the evidence, and the law, and for the reasons fully explained below, it is recommended that the motion be GRANTED.

### BACKGROUND

On September 14, 2017, Diamond B Industries commenced this action by filing a Complaint for Declaratory Judgment.[1] On October 20, 2017, in accordance with Rule 4 of the Federal Rules of Civil Procedure and Louisiana Revised Statute 13:3204, certified copies of the Summons and the Complaint were served, by a

---

[1] Rec. Doc. 1.

commercial courier (FedEx), on the Defendant, Jaymie L. Bancroft-Brownlee.[2] Service was made by delivery of the Summons and Complaint in a parcel addressed to the Defendant, at his address in Kansas.[3] The FedEx Proof-of-Delivery evidences the signed receipt from R. Bancroft, an agent of the Defendant, of the parcel containing the Summons and Complaint upon completion of delivery.[4] The Affidavit of Service was filed into the record on October 20, 2017.[5] The Defendant never answered or otherwise defended the allegations set forth in the Complaint.[6]

Upon the Defendant's failure to answer, the Clerk of Court entered an Entry of Default, on January 10, 2018, notice of which was mailed to the Defendant that same day.[7] Pursuant to Federal Rule of Civil Procedure 55, and Local Rule 55.1, and well after the requisite fourteen days had elapsed, Diamond B Industries filed the instant motion for entry of default judgment in this action for declaratory judgment.[8]

Attached to the motion and admitted into evidence during the hearing held on June 28, 2018, Diamond B Industries has submitted the affidavit of Robert J. Bonin,

---

[2] Rec. Docs. 5, 5-1.
[3] *Id.*
[4] Rec. Doc. 5-1.
[5] Rec. Doc. 5.
[6] Rec. Docs. 11-1, 11-2.
[7] Rec. Doc. 10.
[8] Rec. Doc. 11.

Jr., who is the managing member of Diamond B Industries.[9] Pursuant to Mr. Bonin's affidavit, the following facts have been established.

The Defendant was formerly employed with Diamond B Industries, beginning in June 2017, as the captain on board the M/V Diamond Lugger, a towing vessel owned and operated by Diamond B Industries.[10] On August 4, 2017, the Defendant reported an unwitnessed incident to Diamond B Industries, claiming he slipped and fell in the engine room on board the M/V Diamond Lugger, causing injuries to himself.[11] He was sent in-shore for medical treatment at Ochsner Hospital and was released that same day.[12]

On August 8, 2017, Diamond B Industries received a fax from attorney Tim Young on behalf of the Defendant, in regard to his alleged injury.[13] In response, Diamond B Industries, requested that the Defendant submit any and all medical information regarding his alleged injury.[14] On August 23, 2017, Diamond B Industries received a letter from the Defendant, requesting that Diamond B Industries pay maintenance and cure in relation to his alleged complaints; however, this correspondence failed to provide the previously requested medical

---

[9] Rec. Doc. 11-3.
[10] Rec. Doc. 11-3, p. 1, ¶ 1.
[11] *Id.* at ¶ 2.
[12] *Id.*
[13] *Id.* at p. 2, ¶ 3.
[14] *Id.* at ¶ 4.

information.[15] Diamond B Industries continuously requested any and all present and past medical records related to the Defendant's complaints.[16] Although the Defendant provided partial medical records from three medical providers, the Defendant has failed to provide his full medical records, including those from Ochsner Hospital on the date of the accident, and has refused to execute a medical authorization in order for Diamond B Industries to obtain such records.[17]

The partial medical records received by Diamond B Industries reveal that the Defendant had a pre-existing history of neck surgery, which was performed in November 2013 by Dr. Dumont, and a foraminatomy of C5-C6 in 2014, all prior to his employment with Diamond B Industries in June of 2017.[18]

At the time he applied for employment with Diamond B Industries, the Defendant was asked to complete a medical history questionnaire. Therein, the Defendant failed to disclose, intentionally misrepresented and/or concealed from Diamond B Industries his pre-existing medical history, specifically, with respect to the above-described two surgeries. In the questionnaire, the Defendant replied "NO" to having ever had a "ruptured or herniated disk" or "spinal fusion or surgical

---

[15] *Id.* at ¶ 5.
[16] *Id.* at ¶ 6.
[17] *Id.* at ¶ 7.
[18] *Id.* at p. 3, ¶ 8.

removal of intervertebral disk."[19] Diamond B Industries later discovered that the Defendant had also previously sued his former employer, Blake Towing, Inc., alleging injuries to his back from an accident on or about August 26, 2012, for which he received medical treatment for his back and neck problems through at least June of 2013.[20] During his employment physical on June 16, 2017, the Defendant also intentionally misrepresented and/or concealed from Diamond B Industries and the physician examining him this relevant pre-existing surgical history and back injuries when he responded "NO" to the questions regarding any prior back pain, joint problems or orthopedic surgery or any hospital admissions within the preceding six years.[21] Mr. Bonin's affidavit states that these non-disclosed medical facts were material to Diamond B Industries' decision to hire the Defendant.[22] Based on the Defendant's partial medical records provided to Diamond B Industries, there exists a connection between the withheld information and the alleged injuries complained of by the Defendant.[23]

---

[19] *Id.* at ¶ 10.
[20] *Id.* at ¶ 9.
[21] *Id.* at ¶ 11.
[22] *Id.* at ¶ 12.
[23] *Id.*

## ANALYSIS

A.     THE DEFAULT JUDGMENT STANDARD AND APPLICABLE LAW

The United States Court of Appeals for the Fifth Circuit has outlined a three step process to obtain a default judgment, pursuant to Rule 55 of the Federal Rules of Civil Procedure: (1) a defendant's default; (2) the clerk's entry of default; and (3) a plaintiff's application for a default judgment.[24] "The service of a summons triggers a duty to respond to a complaint and a failure to respond may result in the entry of default or default judgment under [Rule] 55."[25] Accordingly, under Rule 55(a), the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ."[26] Thereafter, the court may, upon motion by a plaintiff, enter a default judgment against that party.[27]

Default judgments are "generally disfavored in the law[.]"[28] They are considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."[29] "This policy, however, is counterbalanced by

---

[24] *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).
[25] *J&J Sports Prods., Inc. v. Boil & Roux Kitchen, LLC*, No. 17-CV-00276, 2018 WL 1089267, at *1 (M.D. La. Feb. 27, 2018) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937–39 (5th Cir. 1999)).
[26] Fed. R. Civ. P. 55.
[27] *Id.*
[28] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger—Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984)).
[29] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir.

considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."[30] Default judgments "are 'available only when the adversary process has been halted because of an essentially unresponsive party.'"[31]

It follows that "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[32] "There must be a sufficient basis in the pleadings for the judgment entered."[33] "Relevant factors include whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion."[34]

### B. THE DECLARATORY JUDGMENT STANDARD AND APPLICABLE LAW

When considering a declaratory judgment action, a district court must engage in the following three-step inquiry: (1) determine whether the declaratory action is

---

1989) (citations omitted).

[30] *Rogers*, 167 F.3d at 936 (internal citations and quotation marks omitted).
[31] *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).
[32] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).
[33] *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[34] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

justiciable, *i.e.* whether an "actual controversy" exists; (2) whether it has the authority to grant declaratory relief in the case presented; and (3) whether to exercise its broad discretion to decide or dismiss the declaratory judgment action.[35]

### C. THERE IS A SUFFICIENT BASIS FOR DEFAULT JUDGMENT IN THIS DECLARATORY ACTION

This case is designated as an admiralty action, under Federal Rule of Civil Procedure 9(h), over which this Court has original subject matter jurisdiction pursuant to Article III, Section 2 of the United States Constitution, and 28 U.S.C. § 1333, as well as 28 U.S.C. § 1332 for diversity of citizenship. Furthermore, as stated above, the Defendant was properly served with the Summons and Complaint, via Long Arm Service, pursuant to Rule 4 of the Federal Rules of Civil Procedure and Louisiana Revised Statute 13:3204. This Court has the authority to enter a declaratory judgment, pursuant to 28 U.S.C. §§2201 and 2202.

This Court finds, first, that an "actual controversy" exists herein. "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'"[36] "Whether particular facts are sufficiently immediate to establish an

---

[35] *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).
[36] *Orix Credit*, 212 F.3d at 896 (quoting *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir.1986)); *see also Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

actual controversy is a question that must be addressed on a case-by-case basis."[37] The Fifth Circuit has held that a complaint raising the issue of whether an employer is legally obligated to continue to provide an employee with maintenance and cure benefits is a justiciable controversy, even if the employee has not made formal demand for such payments.[38] Here, the Defendant has made a written demand for maintenance and cure payments, and Diamond B Industries seeks a judgment declaring that the Defendant is not entitled to such payments as a matter of law. Thus, a justiciable controversy exists.

Second, Diamond B Industries has established that both subject matter and personal jurisdiction exist and has further shown that there is no pending state court action between the parties in this case. "[A]s a general rule, the district court may not consider the merits of the declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under

---

[37] *Id*.
[38] *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) ("[T]he controversy is real, definite, and concrete, and therefore justiciable, for all of the acts necessary for resolution of the merits of the claim-[the employee's] injury and the course of his subsequent medical recovery-occurred prior to the filing of [the employer's] complaint.").

the Anti–Injunction Act."[39] None of these factors exist, such that this Court has authority to consider the merits of this declaratory action.

It is well established that the court has broad discretion whether to decide a declaratory action and may consider a variety of factors, including the effects of any pending state court proceeding; whether the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping; any possible inequities in permitting the plaintiff to gain precedence in time and forum; inconvenience to the parties or witnesses; and whether retaining the lawsuit would serve the purpose of judicial economy.[40] As argued by Diamond B Industries,

> there is no pending state court action; there is nothing indicating that the plaintiff filed suit in anticipation of a lawsuit filed by defendants; plaintiff did not engage in forum shopping in bringing the suit, as plaintiff is a Louisiana limited liability company and Defendant, although currently a resident and domiciliary of Kansas, was previously domiciled in Louisiana and was at that time employed by Diamond B. Industries; the federal court may not be the most convenient location but defendants lack of response mitigates any inconvenience this location may pose; and finally, retaining this suit would serve the purpose of judicial economy because plaintiff and the court have already expended time and resources in this case.[41]

---

[39] *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993).

[40] *See Rowan Companies,* 876 F.2d at 28-29 (collecting cases); *St. Paul Insurance Company v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994)).

[41] Rec. Doc. 11-1, p. 11.

This Court agrees that it should decide this declaratory action. The analysis now turns to the question of whether there is a sufficient basis in the pleadings to enter a default judgment against the Defendant.

Considering the following factors supplied by the Fifth Circuit, this Court will first determine whether default judgment is appropriate under the circumstances herein: "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion."[42] Each of these factors supports a finding of default.

First, there are no material issues of fact in dispute, as the Defendant was served with the complaint, which triggered his duty to respond, and "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]"[43] As to the second and third factors, the record reflects that the Defendant was served on October 20, 2017; nearly three months later, the Clerk of Court issued a Notice of Entry of Default; and more than three months after that, Diamond B Industries filed the instant motion. Thus, the grounds for default have been clearly established, and

---

[42] *Lindsey*, 161 F.3d at 893.
[43] *Nishimatsu*, 515 F.2d at 1206.

the prejudice factor weighs against the Defendant and in favor of Diamond B Industries. As to the remaining factors, there is absolutely no basis upon which this Court might find that the default has been caused by a good faith mistake or excusable neglect, and the balance of the preceding factors mitigates in favor of default. Finding that default judgment is appropriate, the final step requires that this Court make a determination on the merits of the case.

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel."[44] "The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment."[45] "A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed."[46]

In *McCorpen*, the Fifth Circuit held that a seaman who "knowingly fail[s] to disclose a pre-existing physical disability during his [or her] pre-employment

---

[44] *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (citing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968)).
[45] *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015).
[46] *Jauch*, 470 F.3d at 212 (citing *McCorpen*, 396 F.2d at 548).

physical examination" may not recover maintenance and cure.[47] "In order to establish a *McCorpen* defense, an employer must show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit."[48] Importantly, courts have made a distinction between nondisclosure and concealment.[49] "[I]n the nondisclosure context, the defendant must prove that the plaintiff subjectively believed that her employer would deem her medical condition a matter of importance. The intentional misrepresentation/concealment standard, by contrast, is purely objective."[50]

Here, the material facts are substantively indistinguishable from those in *Meche*.[51] In *Meche*, the employee concealed information, through false statements on a pre-employment medical questionnaire, about three prior work-related low back and neck injuries, for which he received disability payments and sued his former

---

[47] 396 F.2d at 548.
[48] *Meche*, 777 F.3d at 244-45 (citing *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) and *McCorpen*, 396 F.2d at 548).
[49] *Meche*, 777 F.3d at 245.
[50] *Id.*
[51] For purposes of this analysis, the Court need not discuss the distinction in *Meche* between Key Marine Services, L.L.C., and its predecessor Moncla Marine. The Fifth Circuit found "Meche's arguments that an intervening asset sale should render the *McCorpen* defense inapplicable because the successor employer did not itself conduct a pre-employment medical examination [] unpersuasive." 777 F.3d at 246.

employers for damages arising from the three injuries. The Fifth Circuit further found that the employer had established that the nondisclosed medical facts were material, as the employee's hiring had been made conditional upon a doctor performing his physical, and the record did not reflect that the employee disclosed his prior medical history to the doctor performing his physical.[52] And, finally, the Fifth Circuit found that "a connection exists between the withheld information and the injury complained of in the lawsuit," based on the trial court's finding that the employee had aggravated his pre-existing lumbar illness when the alleged accident occurred.[53]

In this case, based on the well-pleaded facts which are deemed admitted, as well as the affidavit of Diamond B Industries' managing member Robert Bonin, this Court finds that all three elements of the *McCorpen* defense have been established. Prior to applying for employment with Diamond B Industries, the Defendant had undergone both a neck surgery and a foraminatomy of C5-C6, and had also previously sued his former employer, alleging injuries to his back, for which he received medical treatment. Thereafter, in his pre-employment medical history questionnaire, the Defendant clearly concealed his pre-existing medical history. Likewise, during his employment physical, the Defendant also failed to disclose this

---

[52] 777 F.3d at 248-49.
[53] *Id.* at 249.

relevant pre-existing surgical history and back injuries to the physician performing his physical. Through Mr. Bonin's affidavit, Diamond B Industries has established that these non-disclosed medical facts were material to Diamond B Industries' decision to hire the Defendant, and that there exists a connection between the withheld information and the alleged injuries complained of by the Defendant. Accordingly Diamond B Industries has established a *McCorpen* defense to payment of maintenance and cure, and it is entitled to default judgment in this case.

## CONCLUSION

For the reasons fully explained above, this Court recommends that the motion for default judgment (Rec. Doc. 11), filed by the Plaintiff Diamond B Industries, LLC, be GRANTED and judgment be entered against the Defendant, Jaymie L. Bancroft-Brownlee and in favor of Diamond B Industries, LLC.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on this 29th day of June 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE